UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL MAZZAFERRO, et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>ARUBA NETWORKS INC, et al.,<br><br>    Defendants. | Case No. 13-cv-02342-VC<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Docket No. 68 |

The motion to dismiss is granted, because the complaint does not plead any actionable misrepresentations by Aruba. Many of the challenged statements are non-actionable puffery. For example, vague comments such as, "I feel like we are in the most superior position," "[w]e are pleased with our continued momentum," and "we are very, very bullish," simply express corporate optimism and cannot support a claim for securities fraud. *See In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010).

The remaining statements are not actionable because the complaint does not plead facts to support an inference that they were false or misleading when made. The complaint alleges that Aruba's statements, including those about its win rate (*e.g.,* the "win rate actually has not gone down or in fact . . . increased modestly" and "our competitive rate remains high"), its gross margins, (*e.g.,* "we have very high gross margin business in those areas"), its market share (*e.g.,* "we're gaining share"), and its competitive advantages over Cisco (*e.g.,* "We feel very good about our ClearPass platform and our ability to compete on differentiation" and the project pipeline has "never been better"), were false or misleading because the company was actually struggling to compete with Cisco. In support, the complaint includes statements from six confidential witnesses. Even if one were to assume the allegations are sufficient to establish reliability and personal knowledge of the confidential witnesses (which is questionable), the statements made by

1   the witnesses in the complaint would not, if true, demonstrate that Aruba's statements were false or
2   misleading.  At most, the witnesses state that Cisco's bundling strategy "materially affected
3   Aruba's ability to win and hold accounts," and that Aruba lost one significant client in early 2013.
4   Am. Compl. ¶¶ 45-47.  That Cisco's strategy "materially affected Aruba's ability to win and hold
5   accounts" does not necessarily mean Aruba was experiencing a net loss of clients or losing its
6   market share to Cisco; this vague assertion is not so inconsistent with the challenged statements as
7   to support an inference that they were false.  *See Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir.
8   2001).  Similarly, the loss of one client is not equivalent to a decrease in market share, competitive
9   advantage, or revenue.  The complaint does not allege how much of the company's business the
10  one client represented or other facts necessary to infer that losing this client would significantly
11  impact the company's overall financial performance.  There are also no specific allegations about
12  other clients being lost, the ratio of clients lost to clients added, how many projects were or were
13  not in the pipeline, or whether the company was actually losing revenue or market share.

14  The confidential witnesses' other statements, for example that Cisco was "a serious threat,"
15  "becoming extremely aggressive," and "increasingly targeting the Wi-Fi space and Aruba in
16  particular," only serve to show that Cisco was a serious competitor.  Am. Compl. ¶¶ 42-45.
17  Aruba's awareness of or even concern regarding competition from Cisco, a well-known market
18  leader, does not indicate that Cisco was succeeding in taking Aruba's market share or that Aruba's
19  public statements regarding its growing market share were false.  Moreover, Aruba disclosed it
20  was facing competition from Cisco -- both in its Form 10K and 10Q risk disclosures and during
21  earnings calls.  For example, when asked about the company's ability to compete against Cisco,
22  Melkote responded in part, "so I think Cisco's always been formidable.  They're formidable on a --
23  from a pricing perspective, they're aggressive there.  And they obviously have a lot of other pieces
24  that they bring in to a customer . . . ."  Am. Compl. ¶ 80.

25  Because the complaint fails to plead the underlying, predicate violation, the Section 20(a)
26  and 20A claims are also dismissed.  Dismissal is with leave to amend.  Any amended complaint
27  must be filed within 21 days.  The motion to dismiss has put the plaintiffs on notice of all potential
28  defects in the complaint, including those not reached in this order, and therefore the Court assumes

that the amended complaint, if any, will represent the plaintiffs' last and best shot.

**IT IS SO ORDERED.**

Dated:  August 1, 2014

_____
VINCE CHHABRIA
United States District Judge