IGNACIO E. SALCEDA, State Bar No. 164017
DIANE M. WALTERS, State Bar No. 148136
CHRISTINA N. FILIPP, State Bar No. 287919
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: isalceda@wsgr.com

Attorneys for Defendants
ARUBA NETWORKS, INC., DOMINIC P. ORR, MICHAEL M. GALVIN, and KEERTI MELKOTE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL MAZZAFERRO, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ARUBA NETWORKS, INC., DOMINIC P. ORR, MICHAEL M. GALVIN, and KEERTI MELKOTE,<br><br>Defendants. | CASE NO.: 13-cv-02342-VC<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Date: January 22, 2015<br>Time: 10:00 a.m.<br>Before: Hon. Vince Chhabria |

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I. PLAINTIFF FAILS TO PLEAD AN ACTIONABLE MISREPRESENTATION ............ 1

    A. The Majority of the Challenged Statements Are Non-Actionable Puffery ............. 2

    B. The Premise of the SAC Remains Untenable .......................................................... 3

        1. The Competitive Threat from Cisco Was Fully Disclosed. ......................... 3

        2. The Three Alleged Customer Losses Fail to Plead Falsity. ........................ 3

        3. No Facts Are Pleaded Showing Materially Declining Market Share.......... 4

        4. No Facts Are Pleaded to Show Cisco Products' Purported Superiority. .................................................................................................. 4

        5. No Facts Are Pleaded Regarding Project Pipeline/Momentum. ................. 5

        6. Plaintiff Fails to Plead Falsity as to the May 7, 2013 Announcement. ....... 5

II. THE FORWARD-LOOKING STATEMENTS ARE NOT ACTIONABLE ..................... 6

    A. Many of the Challenged Statements Are Forward-Looking .................................... 6

    B. The Statements Were Accompanied by Meaningful, Cautionary Language .......... 7

III. PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER .................. 7

    A. Plaintiff Fails to Provide Any Direct Evidence of Scienter ..................................... 7

        1. The CWs' Opinions and Supposition Do Not Suffice to Plead Scienter. ........................................................................................................ 7

        2. Plaintiff Fails to Plead Scienter as to the February 2013 Guidance. ............ 9

    B. The Motive Allegations Fail to Provide the Missing Inference of Scienter............ 9

        1. The Stock Sales Were Neither Unusual Nor Suspicious.............................. 9

    C. Plaintiff's Allegations Fail Under a Holistic Analysis ......................................... 10

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alaska Elec. Pension Fund v. Adecco S.A.*,
   434 F. Supp. 2d 815 (S.D. Cal. 2006), *aff'd*, 256 F. App'x 74 (9th Cir.
   2007) .................................................................................................................................. 9

*Brodsky v. Yahoo! Inc.*,
   630 F. Supp. 2d 1104 (N.D. Cal. 2009) ............................................................................. 5

*Browning v. Amyris, Inc.*,
   2014 WL 1285175 (N.D. Cal. Mar. 24, 2014) ................................................................ 6, 8

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
   2014 WL 4180845 (N.D. Cal. Aug. 22, 2014) .................................................................. 3

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
   2013 WL 2156358 (N.D. Cal. May 17, 2013) ................................................................ 7, 8

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
   880 F. Supp. 2d 1045 (N.D. Cal. Jul. 23, 2012) ............................................................... 10

*Gammel v. Hewlett-Packard Co.*,
   905 F. Supp. 2d 1052 (C.D. Cal. 2012) ............................................................................. 8

*In re Accuray, Inc. Sec. Lit.*,
   757 F. Supp. 2d 936 (2010) ............................................................................................... 8

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010) ........................................................................................ 7, 9

*In re Questcor Sec. Litig.*,
   2013 WL 5486762 (C.D. Cal. Oct. 1, 2013) .................................................................. 5, 8

*In re Rackable Sys., Inc. Sec. Litig.*,
   2010 WL 3447857 (N.D. Cal. Aug. 27, 2010) .................................................................. 8

*Oregon Public Employees Ret. Fund v. Apollo Group, Inc.*,
   2014 WL 7139634 (9th Cir. Dec. 16, 2014) ..................................................................... 2

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   2012 WL 1868874 (N.D. Cal. May 22, 2012), *aff'd*, 759 F.3d 1051 (9th Cir.
   2014) .................................................................................................................................. 2

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) ........................................................................................ 2, 8

*Reese v. Malone*,
   747 F.3d 557 (9th Cir. 2014) ............................................................................................. 8

*Reinschmidt v. Zillow, Inc.*,
   2014 WL 5343668 (W.D. Wash. Oct. 20, 2014) ............................................................ 3, 4

DEFENDANTS' REPLY MEMO. ISO MOTION TO DISMISS
CASE NO. 13-cv-02342-VC
-ii-

*Scandlon v. Blue Coat Sys., Inc.*,
    2013 WL 5313168 (N.D. Cal. Sept. 23, 2013) .................................................................. 1, 2

*South Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) ................................................................................................ 8

*Warshaw v. Xoma Corp.*,
    74 F.3d 955 (9th Cir. 1996) .................................................................................................. 2

*Wozniak v. Align Tech., Inc.*,
    2011 WL 2269418 (N.D. Cal. June 8, 2011) ..................................................................... 10

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ................................................................................................ 9

**STATUTES**

15 U.S.C. § 78u-5(h)(i)(1) ............................................................................................................. 7

Defendants respectfully submit this memorandum in support of their motion to dismiss ("Opening Brief" or "MTD") and in reply to plaintiff's [Corrected] Memorandum in Opposition to Defendants' Motion to Dismiss, Dkt. No. 101 ("Opposition" or "Opp.").

## INTRODUCTION

Plaintiff contends in the Opposition that it "dramatically revised" its second amended complaint ("SAC"). The limited changes plaintiff cites, however, do not cure the deficiencies previously identified by the Court and thus fail to alter the outcome mandated by the PSLRA.

*First*, plaintiff notes that the original class period has been "significantly shortened" from twelve to nine months. The slightly shorter period, however, is no less arbitrary, and plaintiff continues to challenge the same statements that the Court held failed to plead falsity.

*Second*, plaintiff points to the unremarkable fact that Aruba utilizes Salesforce software, which allegedly provided information regarding customer wins and losses. Nowhere, however, does plaintiff plead facts showing: (i) specific Salesforce information known by the Defendants at the time of each challenged statement; or (ii) the requisite contextual information identified by the Court. In the absence of such facts, plaintiff fails to show that the unspecified Salesforce data rendered any statement false, much less that any defendant knowingly made a false statement.

*Third*, plaintiff points to a handful of new CWs who offer little more than personal opinions and speculation and thus fail to withstand the rigorous scrutiny imposed by the PSLRA.

This action is precisely the type of case that the PSLRA was intended to end – *i.e.*, a company suffers a short-term business setback and then must defend itself in a lawsuit based on fraud-by-hindsight. The SAC should be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFF FAILS TO PLEAD AN ACTIONABLE MISREPRESENTATION

Like the SAC, the Opposition continues to parrot the same theories and statements the Court previously found lacking. Thus, despite multiple opportunities, the SAC remains devoid of particularized facts describing contemporaneous, contradictory information known to the Defendants that rendered each statement false when made. *See* MTD at 4-11; *see also Scandlon v. Blue Coat Sys., Inc.*, 2013 WL 5313168, at *3 (N.D. Cal. Sept. 23, 2013) ("Plaintiff has not

meaningfully addressed, let alone cured, the problems identified in the prior order that (1) it had not sufficiently identified what representations allegedly were false and why, (2) why a substantial portion of the statements . . . are not best characterized as 'puffery'. . . and, (3) how mere possession of some negative information requires a company to refrain from . . . expressing opinions reflecting a 'rosy' prognosis . . . .").

### A. The Majority of the Challenged Statements Are Non-Actionable Puffery

Many of the statements plaintiff challenges are generalized expressions of corporate optimism, including the very statements previously found to be puffery. *Compare e.g.*, Opp. at 3 (challenging alleged statements in ¶63, including "we think that we are very differentiated" and "I feel like we are in the most superior position,'" which are characterized by plaintiff as "False Statement #1") & Opp. at 7 (citing ¶¶75 and 80, "we are very, very bullish" and "[w]e are pleased with our continued momentum"), *with* Order at 1 (finding many of the statements, including "vague comments" such as "I feel like we are in the most superior position," "[w]e are pleased with our continued momentum," and "we are very, very bullish", to be "non-actionable puffery") (citation omitted); *see also* Opp. at 7; MTD at 4-5 (citing ¶¶63, 67, 72, 75-77, 79-81, 86). As the Ninth Circuit has made clear, such "puffing" is not actionable. *See Oregon Public Employees Ret. Fund v. Apollo Group, Inc.*, 2014 WL 7139634, at *5 (9th Cir. Dec. 16, 2014) ("inherently subjective 'puffing,'" such as statements preceded by qualifiers like "[w]e believe," "would not induce the reliance of a reasonable investor"); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) ("'optimistic, subjective assessment hardly amounts to a securities violation'") (citation omitted); MTD at 4-5.[1]

---

[1] Plaintiff's reliance on decisions pre-dating this authority is misplaced. Opp. at 7; *see also Intuitive Surgical*, 759 F.3d at 1060 (distinguishing *Warshaw v. Xoma Corp.*, 74 F.3d 955, 959-60 (9th Cir. 1996)). The contention that certain conference call statements were not puffery because they allegedly were made to quell investor concerns (Opp. at 7) is also unavailing. Courts, including the Ninth Circuit, have held conference call responses similar to those here to be mere puffery. *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at *3, *13 (N.D. Cal. May 22, 2012) (response regarding "very, very large" opportunity at hospitals was puffery), *aff'd*, 759 F.3d 1051 (9th Cir. 2014); *see also* 759 F.3d at 1060 (same). Plaintiff's attempt to distinguish *Intuitive Surgical* (*e.g.*, Opp. at 7) is unavailing, as it ignores the Ninth Circuit's repeated findings that a wide variety of statements were puffery.

### B. The Premise of the SAC Remains Untenable

#### 1. The Competitive Threat from Cisco Was Fully Disclosed.

Unable to refute that Aruba repeatedly warned of competition from Cisco, plaintiff instead attempts to nitpick Aruba's disclosures. In particular, plaintiff contends that Aruba had a duty to provide details regarding Cisco's specific sales strategies. Opp. at 7. This is contrary to well-established law: a company is under no obligation to compare itself negatively to competitors or to provide specific details regarding competitors' sales strategies. *See* MTD at 5-6; *cf. also City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 2014 WL 4180845, at *11 (N.D. Cal. Aug. 22, 2014) ("[A]ll of the factors Plaintiff identified were publicly known through . . . SEC filings[;]" "[t]he securities laws do not require this level of paranoid disclosure" regarding competition.).[2] As this Court found, "Aruba disclosed it was facing competition from Cisco – both in its Form 10K and 10Q risk disclosures and during earnings calls." Order at 2. Defendants were not required to do more. Plaintiff's attempts to find fault with Aruba's disclosures are unavailing. MTD at 5-6.

#### 2. The Three Alleged Customer Losses Fail to Plead Falsity.

The Opposition repeatedly touts three alleged customer losses as purported evidence of the falsity of the challenged statements. *E.g.*, Opp. at 3-8. Plaintiff fails, however, to provide any contextual details, arguing that it is not required "to specifically tie the omissions regarding the severe impact of Cisco competition to specific revenue declines." Opp. at 8. By failing to provide any context, plaintiff ignores the Court's order, which made clear that merely alleging the loss of a customer does not equate to a "decrease in market share, competitive advantage, or revenue." Order at 2. In the absence of allegations such as "how much of the company's business" the three customers represented, "the ratio of clients lost to clients added," "how many projects were or were not in the pipeline," or any "other facts necessary to infer that losing [these

---

[2] Moreover, the suggestion that investors were unaware of "bundling" is inaccurate. *See* MTD at 6 n.2; *see also Reinschmidt v. Zillow, Inc.*, 2014 WL 5343668, at *6 (W.D. Wash. Oct. 20, 2014) ("'Where information has been made credibly available to the market by other sources[,]' a failure to disclose that information is not actionable.") (citation omitted).

customers] would significantly impact the company's overall financial performance[,]" plaintiff fails to demonstrate how the three alleged customer losses rendered optimistic statements regarding Aruba's ability to compete against Cisco and technological differentiation false when made. *Id.* Plaintiff's failure to demonstrate a connection between any statement and the alleged customer losses is fatal to its claim. *See, e.g.*, *Reinschmidt*, 2014 WL 5343668, at *2, *10 (optimistic statements regarding display advertising revenue generally were not rendered misleading by alleged omissions regarding the termination of a display advertising customer).

Moreover, the absence of any particularized facts showing the purportedly crippling effect of the alleged losses is not surprising. Indeed, plaintiff does not – and cannot – dispute that, despite the alleged loss of these three customers before November 15, 2012 (¶72), when Aruba announced results for 1Q13 on November 15, 2012, it reported a 21% increase in revenue, and the following quarter, it reported a 23% increase. MTD at 8.

### 3. No Facts Are Pleaded Showing Materially Declining Market Share.

The Opposition only serves to highlight the absence of any factual support in the SAC showing materially declining market share. Indeed, neither the SAC nor the Opposition provides any comparative market share statistics or contextual details. Instead, plaintiff just repeats the same expressions of optimism regarding "bake off[s]," ability to win, and technological differentiation and contends that the statements were misleading because of the same three alleged customer losses cited throughout the SAC. Opp. at 8. Plaintiff never explains how these alleged customer losses impacted market share in any way, much less pleads particularized facts showing a material decline in Aruba's market share. MTD at 7-8.

### 4. No Facts Are Pleaded to Show Cisco Products' Purported Superiority.

Plaintiff also continues to challenge a number of statements expressing optimism regarding Aruba's technological differentiation and ability to win new accounts. *E.g.*, Opp. at 3-5 ("False Statement[s]" 2, 3, 4). Like the SAC, however, the Opposition is devoid of any *facts* showing the purported superiority of Cisco's products, much less that Aruba was a "sinking" ship (¶72) that could no longer compete. Instead, plaintiff points to: (1) CW allegations regarding the three customer losses, and (2) the opinions of former sales employees, none of

whom claims to have a technical background. Opp. at 3-5. As shown *supra* at 3-4, the three alleged customer losses fail to demonstrate the falsity of any statement. Merely repeating the same deficient CW allegations does not satisfy the requirements for pleading falsity. *See id.*; MTD at 8-11; *see also Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1113 (N.D. Cal. 2009) (Repetition of CW allegations "does not demonstrate that the CW's allegations prove the falsity of each of Defendants' statements."). Likewise, the opinions of former sales employees regarding the purported superiority of Cisco products and tactics do not constitute particularized facts, nor do they suffice to show that any statement was false when made. MTD at 6-11.[3]

### 5. No Facts Are Pleaded Regarding Project Pipeline/Momentum.

Plaintiff's challenge to statements allegedly made regarding Aruba's "project pipeline" and "revenue momentum" on March 27, 2013 (Opp. at 6, "False Statement #6") also fails. In addition to the fact that these cited statements are forward-looking and thus protected by the Safe Harbor (*see infra* Section II), plaintiff fails to plead a single fact regarding Aruba's pipeline in March 2013 (*i.e.*, the project pipeline "both in the area of large-scale MOVE architecture-oriented campus LAN and ClearPass-oriented access management" (¶86)), much less particularized facts showing that the statements were false when made. Instead, plaintiff again contends that the statements were false because Mr. Orr failed to discuss past customer losses and unspecified deal delays. Opp. at 6. Defendants, however, had no duty to make comparisons to Cisco (*supra* at 3), nor did the alleged customer losses that plaintiff contends occurred long before March 2013 render the March statements about expectations for the future false.

### 6. Plaintiff Fails to Plead Falsity as to the May 7, 2013 Announcement.

Plaintiff contends that certain of Mr. Orr's statements in the May 7, 2013 press release, which attributed a push out of customer orders in April 2013 "primarily to a challenging economic environment worldwide[,]" were false. Opp. at 6 ("False Statement #7"). According

---

[3] Plaintiff's reliance on *In re Questcor Securities Litigation*, 2013 WL 5486762 (C.D. Cal. Oct. 1, 2013) (Opp. at 5) is misplaced, as Questcor's main product accounted for 99% of revenue. Unlike Questcor, Aruba has a number of different products sold to customers in a wide variety of industries. MTD at 8 n.5. Thus, statements about the technical advantages of certain products and/or customer wins do not have a direct correlation to total revenue as in *Questcor*.

to plaintiff, the "true reason" for the 3Q13 revenue and income shortfalls was the loss of the three accounts that allegedly occurred more than six months earlier. *Id.*; ¶90. Yet, the only allegation offered is the opinion of CW10 (¶90), which fails on multiple grounds.

*First*, the allegations attributed to CW10 in ¶90 do not attempt to tie the 3Q13 results to the three alleged customer losses. Rather, the allegations consist merely of CW10's opinion "Aruba missed its Q3 numbers" due to Cisco's allegedly superior sales approach and products. ¶90. *Second,* plaintiff concedes that CW10 left Aruba in March 2013 – *i.e.*, CW10 left Aruba before the end of 3Q13 and is opining on financial results that had not yet been concluded. *Third*, plaintiff does not contend that CW10 had any involvement in the preparation of the forecasts or financial results; his opinions on such topics are thus of little weight.

Plaintiff's attempts to rely on the purported "end of the Class Period" admission that Aruba "cannot compete" with Cisco to demonstrate falsity are equally unavailing as no such admission was made. Opp. at 1, 6, 8. The alleged statement referenced only a "small single-digit number of deals" involving bundling with data centers. ¶140. Moreover, the alleged statements regarding increased competition from Cisco in no way suggest that Defendants knew months earlier that the revenue guidance could not be achieved.[4] Finally, Aruba's continued success refutes any notion that it "cannot compete." *See* MTD at 2-3, 8, 15.[5]

## II. THE FORWARD-LOOKING STATEMENTS ARE NOT ACTIONABLE

### A. Many of the Challenged Statements Are Forward-Looking

Although plaintiff appears to concede that the revenue guidance was forward-looking (*e.g.*, ¶¶83-85), plaintiff inconsistently argues that statements about future margin estimates (¶86), ability to win new accounts (¶75), gaining share (¶63), and momentum (¶80) were "historical and present facts." *Compare* Opp. at 9 *with* MTD at 11. Plaintiff is incorrect. Forward-looking statements include: "a projection of revenues," "the plans and objectives of

---

[4] *See, e.g., Browning v. Amyris, Inc.*, 2014 WL 1285175, at *20 (N.D. Cal. Mar. 24, 2014) ("Acknowledging that Amyris had more trouble scaling up its process than anticipated does not show that the defendants always knew that the projections were unattainable").

[5] Plaintiff labels the February 21, 2013 revenue forecasts as "False Statement #5." Opp. at 5. Such forecasts are subject to protection under the Safe Harbor. *See infra* Section II.

management for future operations," "a statement of future economic performance," and "any statement of the assumptions underlying or relating to" the foregoing. 15 U.S.C. § 78u-5(h)(i)(1).

### B. The Statements Were Accompanied by Meaningful, Cautionary Language

Plaintiff concedes that the forward-looking statements were accompanied by warnings, but argues that the cautionary language does not preclude liability because of Defendants' purported knowledge of Cisco's pricing and bundling strategies. Opp. at 9. As before, plaintiff erroneously conflates the independent subsections of the Safe Harbor. The Ninth Circuit has made clear that, "if a forward-looking statement is identified as such and accompanied by meaningful cautionary statements, then the state of mind of the individual making the statement is irrelevant, and the statement is not actionable[.]" *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010). Thus, the statements are protected under the Safe Harbor's first subsection.[6]

## III. PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER

### A. Plaintiff Fails to Provide Any Direct Evidence of Scienter

#### 1. The CWs' Opinions and Supposition Do Not Suffice to Plead Scienter.

Unable to point to any particularized facts giving rise to a strong inference of scienter, plaintiff continues to rely heavily on the opinions and speculation of former employees. Opp. at 10-12. Not one of these CWs, however, purports to have personal knowledge as to what any individual defendant knew at the time of any challenged statement. The CW allegations thus fail to raise a strong inference of scienter. *See City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,

---

[6] In any event, the suggestion that Aruba made no disclosures during the Class Period regarding Cisco's sales strategies is refuted by its SEC filings. Aruba cautioned that it expected competition to intensify and that a number of Aruba's competitors, including Cisco, had "greater name recognition, larger customer bases and significantly greater financial, technical, sales, marketing and other resources." MTD at 2. Aruba warned that such competition "could reduce our market share, require us to lower our prices, or both." *Id.* Plaintiff's contention that the subsequent addition of the word "bundle" to Aruba's risk disclosures somehow rendered past disclosures inadequate also is erroneous. Opp. at 9. Even though it was under no obligation to make any statements regarding competitors' tactics (MTD at 5-6), Aruba warned throughout the class period that "[p]otential customers may prefer to purchase from their existing suppliers[,]" *i.e.*, bundle new products with existing products. *Id.* at 2. Aruba also cautioned that some competitors made acquisitions "to offer a more comprehensive solution" and "possible consolidations may . . . be able to offer greater pricing flexibility, making it more difficult for [Aruba] to compete effectively, including on the basis of price, sales and marketing programs, technology or product functionality." Ex. 4, at 18.

2013 WL 2156358, at *9 (N.D. Cal. May 17, 2013) ("The SAC does not allege that CW6 had any contact with the individual defendants; thus, CW6 offers 'little, if any, reliable basis from which to infer scienter.'") (citation omitted); *In re Rackable Sys., Inc. Sec. Litig.*, 2010 WL 3447857, at *9 (N.D. Cal. Aug. 27, 2010) (allegations insufficient where CWs "are not alleged 'to have had any interaction or communication with any of the defendants, or to have provided any defendant with information, or to have heard or read any statement by any defendant, that contradicted or even cast doubt on a public statement'") (citation omitted); MTD at 8-11, 12-13.[7]

Likewise, plaintiff's allegations that the Defendants purportedly accessed Salesforce data on a daily basis and attended meetings where unspecified reports were discussed (Opp. at 11-12) fail to identify contemporaneous, specific information in any defendant's hands that rendered any challenged statement false when made. Missing from the SAC "are allegations linking specific reports and their contents to the executives, not to mention the link between the witnesses and the executives." *Intuitive Surgical, Inc.*, 759 F.3d at 1062-63; *Browning*, 2014 WL 1285175, at *16 ("[A]llegations such as that a defendant . . . 'tracked [ ] demand using data' '[a]re insufficient to plead scienter'. . . if the plaintiff cannot allege 'hard numbers or other specific information' about what the data showed."); MTD at 9-10.[8]

---

[7] Plaintiff erroneously suggests that the fact that CW5 (like most of the other CWs) had no direct contact with the Defendants "does not diminish the value of their information." Opp. at 11. Courts routinely hold to the contrary. *See Intuitive Surgical*, 759 F.3d at 1062-63 (allegations based upon "impressions of witnesses who lacked direct access to the executives" lacked the requisite "link between the witnesses and the executives"); *In re Accuray, Inc. Sec. Lit.*, 757 F. Supp. 2d 936, 949 (2010) ("difficult to surmise how the opinions and observations" of CWs who had no contact "could support a reasonable inference about what . . . Defendants knew"); MTD at 8-11, 12-13. Plaintiff's reliance on *Reese v. Malone*, 747 F.3d 557 (9th Cir. 2014) is misplaced (Opp. at 11), as the cited passage does not refer to a CW, but rather, to a defendant. 747 F.3d at 572. *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1073-79 (C.D. Cal. 2012) also is inapposite. Opp. at 11. Although the Court noted that hearsay did not "automatically" render CW statements unreliable, the Court granted the motion to dismiss, finding the CW allegations to be deficient on multiple grounds. 905 F. Supp. 2d at 1073-79.

[8] Plaintiff's attempts to rely on a core operations inference are also unavailing. Opp. at 12-13. The factors set forth in *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785-86 (9th Cir. 2008) for invoking the doctrine are not present here: (1) no facts are alleged as to each defendant's "actual" contemporaneous exposure to contradictory information; and (2) the circumstances fall far short of those so "rare" that it would be "absurd" not to impute scienter. The circumstances in *Questcor* (Opp. at 13) are readily distinguishable. 2013 WL 5486762, at *2-14 (misrepresentations pertained to a single product that accounted for **99%** of revenue).

### 2. Plaintiff Fails to Plead Scienter as to the February 2013 Guidance.

The February 2013 revenue guidance was forward-looking and accompanied by meaningful cautionary language and thus protected under the Safe Harbor. *Supra* at 6-7. Plaintiff nevertheless argues that the guidance is actionable because its proximity to the May 2013 reduction in guidance, as well as certain of the CW allegations, purportedly demonstrate that "Defendants had no reasonable basis for the guidance and were aware of facts tending to seriously undermine its accuracy." Opp. at 12. As noted above, the Ninth Circuit has rejected that very argument, holding that, under the first subsection of the Safe Harbor, "the state of mind of the individual making the statement is irrelevant[.]" *Cutera*, 610 F.3d at 1112.

In any event, plaintiff's argument lacks factual support. Plaintiff fails to identify any specific facts purportedly known to Defendants in February 2013 that rendered the guidance knowingly false when made. Instead, plaintiff points to CW allegations contending that salespersons were failing to meet quotas, certain salespeople were leaving the Company, and Aruba purportedly was losing customers to Cisco. Opp. at 12 (citing ¶¶57, 72, 93, 140). Missing are any particularized facts demonstrating the purported impact of these alleged issues on the guidance or that they were not taken into account in formulating the guidance. *See, e.g., Alaska Elec. Pension Fund v. Adecco S.A.*, 434 F. Supp. 2d 815, 828 (S.D. Cal. 2006) (noting CWs' failure to "provide any allegations quantifying the impact of the[] alleged improprieties on [the company's] revenues, or . . . financial results"), *aff'd*, 256 F. App'x 74 (9th Cir. 2007).[9]

### B. The Motive Allegations Fail to Provide the Missing Inference of Scienter

#### 1. The Stock Sales Were Neither Unusual Nor Suspicious.

Plaintiff does not – and cannot – dispute two key facts: (1) the alleged stock sales were pursuant to predetermined Rule 10b-5 plans, and (2) Messrs. Orr and Melkote sold only a small

---

[9] Merely listing sales employees who allegedly left during the Class Period does not suffice to plead scienter. MTD at 12 n.7; *cf. Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009) (plaintiffs must allege that the departure "at issue was uncharacteristic when compared to the defendant's typical hiring and termination patterns or was accompanied by suspicious circumstances"). Nor does the speculation of a former contract employee regarding the reasons for the departure of the general counsel suffice to show scienter. MTD at 12 n.7.

percentage of their holdings during the class period. MTD at 13-14; Opp. at 14. Courts routinely have held that such sales do not raise a strong inference of scienter. MTD at 13-14; *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1069 (N.D. Cal. Jul. 23, 2012) (10b5-1 plans provide "innocent, alternative explanation for the stock sales," thus "negat[ing] an inference of scienter."); *Wozniak v. Align Tech., Inc.*, 2011 WL 2269418, at *14 (N.D. Cal. June 8, 2011) ("typically 'larger sales amounts' than 37%" needed to show scienter) (citation omitted).

Unable to refute this, plaintiff attempts to portray the timing and size of the 2013 sales as suspicious. Opp. at 14-15. That sales were made in the latter part of the class period, however, does not alter the fact that the sales were pursuant to trading plans and a small portion of the total holdings. *Id*. Moreover, plaintiff's allegations refute the claim that the size of sales was unusual or inconsistent with past practices. *See, e.g.*, ¶109 (reflecting Mr. Orr's sale of over 100,000 shares in December 2012), ¶125 (alleging Mr. Melkote sold 450,000 shares in September 2010).

### C. Plaintiff's Allegations Fail Under a Holistic Analysis

As shown in the prior motion to dismiss and in the Opening Brief, multiple competing inferences weigh against scienter here. MTD at 14-15. In particular, Aruba's continued financial success – both during and after the Class Period – provides a powerful competing inference directly belying the contention that Defendants knew that Aruba would be "unable to overcome" competition from Cisco. *Id*.[10]

### CONCLUSION

Defendants respectfully request that the Complaint be dismissed with prejudice.

Dated: December 17, 2014

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI, P.C.

By: /s/ Ignacio E. Salceda
Ignacio E. Salceda

Attorneys for Defendants

---

[10] Because the Section 10(b) claim fails, the Section 20(a) and 20A claims fail. MTD at 15.